104 F.3d 352
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
Leon C. WILLIAMS, Plaintiff-Appellant,
v.
Tim HAVAS and the Legal Aid Society of Sullivan County,
Inc., Defendants-Appellees.
 No. 96-7258.
 United States Court of Appeals, Second Circuit.
 Oct. 30, 1996.
 
 Leon Williams appeals from a judgment entered on February 21, 1996, in the United States District Court for the Southern District of New York (Brieant, J.) that dismissed plaintiff Williams's legal malpractice claim by granting the defendants' motion for summary judgment. Williams contends that the district court erred in granting summary judgment because genuine issues of material fact remained as to whether defendant Tim Havas,[1] an attorney who formerly represented Williams, was negligent. We disagree and affirm the district court.
 S.D.N.Y.
 AFFIRMED.
 Alexander J. Wulwick (New York, NY)
 Diane K. Kanca (McDonough Marcus Cohn & Tretter; New York, NY)
 Present: MESKILL, CALABRESI, CABRANES, Circuit Judges.
 
 ORDER
 
 1
 The following facts are not disputed. Plaintiff was arrested in Birmingham, Alabama in August, 1991 on an outstanding felony arrest warrant for "Leon Williams a/k/a Iceman." The warrant was issued in Sullivan County, New York for the sale of heroin to an undercover police officer in or about December, 1986. Plaintiff is not Leon Williams the Iceman, although he shares the same first and last names as that person. Perhaps because their names are the same, parts of plaintiff Williams's criminal file (for a prior conviction in Sullivan County) had been mistakenly placed in "Iceman" Williams's file. Thus, when the New York State Police, who were looking for "Iceman" Williams, sent Alabama authorities identifying documentation, they actually provided data (including fingerprints) that belonged to the plaintiff. The plaintiff was therefore incorrectly identified as "Iceman" Williams by the Alabama authorities.
 
 
 2
 The plaintiff waived extradition and was arraigned in Sullivan County on September 9, 1991. Havas was assigned to represent the plaintiff. Plaintiff was incarcerated in the Sullivan County jail pending trial and remained there from September 9, 1991 to about April 10, 1992, when the erroneous identification was discovered and he was released.
 
 
 3
 In September, 1991, plaintiff Williams told Havas that he was not "Iceman" Williams. Later, in mid-October of 1991, Sergeant Ward and Sergeant Washington of the Sullivan County jail also told Havas that, based on their prior exposure to both persons, they believed that the plaintiff was not "Iceman" Williams. They repeated these comments in subsequent conversation with Havas. Sergeant Ward testified in the course of this litigation, however, that he had thought that plaintiff Williams might have been using "Iceman" Williams's name. Havas similarly testified that the sergeants had been in doubt as to whether the plaintiff had sold the heroin to the undercover agent, and that he himself had shared that doubt. Havas further testified that he asked the sergeants to commit their statements to writing, but that they refused.
 
 
 4
 Havas did not convey the sergeants' statements to the court or the district attorney at that point. Instead, he attempted to corroborate an alibi defense raised by the plaintiff. The alibi was intended to show that the plaintiff was in Alabama at the time of the crime and therefore could not have been the person who sold the drugs in New York. Havas also sought to obtain the photographs used to identify plaintiff Williams as "Iceman" Williams, and demanded a Wade hearing. By April 1992, none of these steps had worked to exonerate the plaintiff. But in early April, District Attorney Lungren told Havas that he was 95% convinced that plaintiff Williams was not "Iceman" Williams. Havas testified that he was partly responsible for convincing Lungren; Lungren denied this. In any event, Lungren requested a "show up" from which it became clear that the plaintiff was not the one who had sold heroin to the undercover agent. The plaintiff was thereafter immediately released.
 
 
 5
 The plaintiff then brought this malpractice suit in federal district court on diversity grounds, alleging that Havas was negligent in not immediately bringing the sergeants' statements to the attention of the district attorney. He avers that this negligence prolonged his stay in jail by five or six months. The district court granted summary judgment for Havas, finding that while Havas may have made an erroneous judgment call, "[t]he exercise of honest legal judgment may not be tested by hindsight." On appeal, Williams contends that the district court erred in granting Havas's motion for summary judgment.
 
 
 6
 We review a district court's grant of summary judgment de novo. Moller v. North Shore Univ. Hosp., 12 F.3d 13, 15 (2d Cir.1993). Summary judgment may be granted only if the movant can establish "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 202 (2d Cir.1995). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).
 
 
 7
 To prevail in a legal malpractice suit under New York State law, the plaintiff must show that the defendant attorney was negligent. See Fidler v. Sullivan, 93 A.D.2d 964, 964, 463 N.Y.S.2d 279, 280 (N.Y.A.D.3d Dept.1983) (citations omitted). To prove negligence, the plaintiff must demonstrate that the attorney's conduct "fell below the ordinary and reasonable skill and knowledge commonly possessed by a member of his profession." Grago v. Robertson, 49 A.D.2d 645, 646, 370 N.Y.S.2d 255, 258 (N.Y.A.D.3d Dept.1975). Most important, the attorney "is not held to the rule of infallibility and is not liable for an honest mistake of judgment where the proper course is open to reasonable doubt." Id. The choice "among several reasonable courses of action does not constitute malpractice." Rosner v. Paley, 65 N.Y.2d 736, 738, 492 N.Y.S.2d 13, 14 (1985).
 
 
 8
 On the undisputed facts, it is clear that Havas did not commit malpractice. Havas vigorously pursued his client's alibi defense, attempted to obtain the photographs used to identify his client, and sought a Wade hearing. He chose to pursue this course rather than the course of bringing the sergeants' testimony to the attention of the district attorney. In hindsight it seems that he most likely made the wrong decision. However, the fact that plaintiff's fingerprints matched the ones in "Iceman" Williams's file, as well as Sergeant Ward's uncertainty about whether the plaintiff was using "Iceman" Williams's street name as an alias, support the conclusion that "the proper course of action [was] open to reasonable doubt." Grago, 49 A.D.2d at 646. Havas could have reasonably believed that the most promising way to win plaintiff Williams's release was to get other evidence that the plaintiff could not have been the New York perpetrator and that he should arm himself with such evidence before he brought the additional doubts of Sergeants Washington and Ward to the attention of the district attorney. Havas's judgment call therefore did not sink to the level of malpractice.
 
 
 9
 Plaintiff nevertheless claims that there were three disputed issues of material fact. First, the plaintiff contests Havas's claim that Havas asked Ward and Washington to put their belief that the plaintiff was not "Iceman" Williams into writing. Second, the plaintiff disputes that Havas believed that the plaintiff had sold heroin to the undercover officer (under the alias of "Iceman" or otherwise). Finally, he challenges Havas's statement that Havas played a role in ultimately bringing the sergeants' testimony regarding mistaken identity to the attention of the district attorney. Each contention raises a genuine dispute about the facts. None of these factual issues, however, is material, because even if all of them were resolved in the plaintiff's favor, they would not undermine the proposition that Havas made a legitimate judgment call between two viable courses of action. The district court thus properly granted summary judgment.
 
 
 10
 We have examined all of the defendant's contentions, and find them to be without merit. The district court's judgment is therefore affirmed.
 
 
 
 [1]
 Havas's employer, the Legal Aid Society of Sullivan County, is also a named defendant. Because the Legal Aid Society's liability is predicated solely on Havas's actions, we follow the plaintiff's practice of referring to Havas as though he were the only defendant-appellee